UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>LUIS PADILLA | No. 3:24-cr-87 (SRU) |

### ORDER ON MOTION FOR SENTENCE REDUCTION

Luis Padilla, currently incarcerated at Hazelton FCI, filed the instant motions for a reduction of his sentence. Padilla argues that his ineligibility for rehabilitative programming while serving a relatively short sentence is an extraordinary and compelling circumstance that warrants a reduction of his sentence to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Mots. for Sentence Reduction, Docs. No. 54, 60.

The government opposes the motion on the grounds that Padilla has not exhausted his administrative remedies, and that he has not demonstrated extraordinary and compelling reasons to warrant a sentence reduction. *See* Opp'n to Mot. for Sentence Reduction, Doc. No. 58.

For the following reasons, Padilla's motions for a reduction of his sentence are **denied**.

### I.    Background

On February 27, 2018, District Judge Vanessa L. Bryant sentenced Padilla to 78 months' imprisonment, followed by 5 years' supervised release, for Conspiracy to Distribute and to Possess With Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C). *See* Judgment, Doc. No. 189, *United States v. Luis Padilla*, No. 3:16-cr-00205-2 (VLB). On or about March 17, 2021, the Bureau of Prisons (BOP) transferred Padilla to the Drapelick Center, a Residential Reentry Center (RRC) in Bloomfield,

Connecticut, to serve the final portion of his sentence. *See* Affidavit of Christopher Schuessler, Doc. No. 1-1, at ¶ 4.

On June 1, 2022, Padilla walked out of the Drapelick Center and did not return. *See* Indictment, Doc. No. 17. After almost two years, Padilla was apprehended by police in Bangor, Maine on April 5, 2024, leading to his arrest and indictment in this case on the charge of Escape from Custody, in violation of 18 U.S.C. § 751(a). *Id.* On June 10, 2024, Padilla plead guilty to Escape from Custody. *See* Plea Agreement, Doc. No. 35. On September 13, 2024, District Judge Jeffrey A. Meyer sentenced Padilla to a term of imprisonment of 12 months and 1 day, to be followed by a term of supervised release of 3 years. *See* Judgment, Doc. No. 53.

On December 20, 2024, Padilla filed a motion to reduce his sentence. Doc. No. 54. In it, he explained that a bed was available to him at the Salvation Army's Adult Rehabilitation Center. *Id*. On January 16, 2025, his case was transferred to my docket. I reached out to counsel to inquire whether the government opposed the motion, and whether a bed was still available to Padilla at the Salvation Army. The government filed its opposition to the motion on January 23, 2025. Doc. No. 56.[1] On February 28, 2025, Padilla filed another motion to reduce his sentence, explaining that a bed was still available to Padilla at the Salvation Army and would remain available until March 14, 2025. Doc. No. 60.

## II.    Standard of Review

As amended by the First Step Act, 18 U.S.C. § 3582(c) authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in section 3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and

---

[1] The government later amended its memorandum in opposition, *see* doc. no. 58, and I will therefore cite to the government's amended opposition throughout this order.

that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). A court may make such a modification only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary. That section was amended, effective November 1, 2023, and now provides an expanded list of "extraordinary and compelling reasons" warranting compassionate release. *See* U.S.S.G. § 1B1.13.

The defendant bears the burden of proving that he or she is entitled to a sentence reduction. *United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020) (internal citations omitted).

**III.   Discussion**

  A.  Exhaustion

As an initial matter, the government argues that Padilla failed to exhaust his administrative remedies. *See* Doc. No. 58, at 4-5. The First Step Act requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or wait 30 days after "the receipt of such a request by the warden of the defendant's facility" before filing a motion in federal court. 18 U.S.C. § 3582(c)(1)(A). Specifically, the government argues that the warden of FCI Hazelton denied Padilla's request that the BOP file a motion to reduce Padilla's sentence, and that Padilla never appealed that denial through the Administrative Remedy Procedure. *See* Doc. No. 58, at 5.

The administrative exhaustion requirement of section 3582(c)(1)(A) is a mandatory "claim-processing rule," rather than a "jurisdictional limitation." *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021). Courts can and do "waive[] § 3582(c)(1)(A)'s exhaustion requirement in contexts where exhaustion would be futile, incapable of granting adequate relief, or would result in undue prejudice." *United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023). In this case, even if Padilla failed to satisfy the requirement that he exhaust his administrative remedies because he failed to appeal the warden's denial of his request, I conclude that the exhaustion requirement should be waived because it would be futile.

Requiring Padilla to exhaust administrative remedies would almost certainly result in the BOP denying his request. *Id.* at 277 ("[T]he BOP has abdicated the responsibility of bringing compassionate release motions to defendants who generally lack formal or informal legal training, all while retaining the ability to impede and delay such defendants' ability to be heard."). The United States Sentencing Commission's records indicate that in Fiscal Year 2023, courts within the Second Circuit heard 92 motions for compassionate release, and granted 36 (39.1%) of those motions. U.S. Sent'g Comm'n, Compassionate Release Data Report: Fiscal Year 2023 Report, Table 3 (2023). Of those successful motions, not a single one was brought by the BOP. *Id.* at Table 5. The same trend held true through Fiscal Year 2024. Of 98 motions heard by courts in the Second Circuit, 36 were granted (36.7%), and not a single successful motion was brought by the BOP. U.S. Sent'g Comm'n, Compassionate Release Data Report: FY 2024 Preliminary Fourth Quarterly Report, Tables 3, 5 (2024). And in the first quarter of Fiscal Year 2025, again the BOP did not bring a single motion for compassionate release within the Second Circuit. U.S. Sent'g Comm'n, Compassionate Release Data Report: FY 2025 Preliminary First Quarter Report, Table 5 (2025). I therefore conclude that, especially in light of the short amount

of time left on Padilla's sentence during which time he could pursue his claim through the administrative appeals process, exhaustion would be futile.

I now turn to the merits of Padilla's motion.

B. <u>Extraordinary and Compelling Reasons</u>

Padilla has not satisfied his burden of demonstrating that "extraordinary and compelling reasons" warrant a reduction of his sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

Padilla's motion does not point to any medical or family circumstance warranting his release, or to any other circumstance of similar gravity. *See* U.S.S.G. § 1B1.13(b). Instead, Padilla points only to his ineligibility for rehabilitative programming while in BOP custody (due to his short sentence), and his ineligibility for prerelease custody (due to his escape conviction), which he argues makes his remaining sentence "all punishment and no rehabilitation." Doc. No. 60, at 2-3. Although I appreciate Padilla's desire to participate in rehabilitative programming immediately, his inability to do so does not amount to an extraordinary and compelling circumstance. Padilla has only a number of months left on his sentence, and he will have resources available to him for addiction treatment when he is on supervised release.

Padilla's ineligibility for prerelease custody is also not an extraordinary and compelling reason. It is a consequence of his prior escape when he was transferred to prerelease custody. Moreover, when Judge Meyer sentenced Padilla, he was aware that Padilla's escape conviction would make him ineligible for transfer to prerelease custody during the final months of his term of imprisonment under 18 U.S.C. § 3624(c).

C. <u>Section 3553(a) Factors</u>

When considering any motion for compassionate release I must consider the factors set forth in section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Pursuant to section

5

3553(a), I must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). I must also examine other factors, including the nature and circumstances of the offense and the history and characteristics of the defendant. *Id.* § 3553(a)(1).

After careful consideration of the section 3553(a) factors, I conclude that Padilla's sentence of 12 months and 1 day of imprisonment—a sentence at the bottom of the Guidelines range that he faced at sentencing—is a just sentence. Padilla's offense was a serious one. Even worse, after escaping from the Drapelick Center, Padilla was a fugitive for nearly two years. His sentence is therefore sufficient but not greater than necessary to reflect the seriousness of his crime and promote respect for the law.

Padilla's motion emphasizes that he has been in custody for 11 months already and will remain in custody for another 5 months. *See* Doc. No. 60, at 3. That fact is also a result of his escape. When Padilla was arrested on April 5, 2024, he was returned to custody to serve the remaining portion of the sentence he was serving in 2022 when he escaped from federal custody. *See* Def.'s Sentencing Mem., Doc. No. 46, at 17-18. Only after he had finished serving the remainder of his prior sentence, on or around September 12, 2024, *see id.*, did he begin serving his sentence in this case. His estimated release date is currently July 21, 2025. Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed March 10, 2025). Therefore, accounting for good time credit, he will serve a total of just over 10 months' incarceration for his conviction of escape. He has, to date, served only about 55% of his

6

sentence. I therefore conclude that the purposes of sentencing would not be served by reducing Padilla's sentence to time served.

## IV.     Conclusion

For the foregoing reasons, Padilla's motions to reduce his sentence, docs. no. 54 and 60, are **denied.**

It is so ordered.

Dated at Bridgeport, Connecticut, this 10th day of March 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge